## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 22-cv-22594-BLOOM/Torres

MOVIE PROP RENTALS LLC, *et al.*,

      Plaintiffs,

v.

THE KINGDOM OF GOD GLOBAL
CHURCH, *et al.*,

      Defendants.

_____/

## <u>ORDER ON MOTION FOR SUMMARY JUDGMENT</u>

**THIS CAUSE** is before the Court upon Plaintiffs Movie Prop Rentals, LLC, and Miami

Prop Rentals, LLC's ("Plaintiffs") Motion for Summary Judgment, ECF No. [102] ("Motion").

Defendants the Kingdom of God Global Church and Joshua Media Ministries International

("Defendants") filed a Response in Opposition, ECF No. [115] ("Response"), to which Plaintiffs

filed a Reply, ECF No. [126] ("Reply"). The Court has carefully reviewed the Motion, all opposing

and supporting submissions,[1] the record in this case, the applicable law, and is otherwise fully

advised. For the reasons set forth below, the Motion is granted in part and denied in part.

### I.   BACKGROUND

Plaintiffs and Defendants each assert breach of contract and related claims arising from the

construction of a complex stage prop for an outreach event initially scheduled for July 2020. On

June 10, 2022, Plaintiffs initiated this breach of contract action against Defendants in the Circuit

---

[1] Plaintiffs filed a Statement of Material Facts, ECF No. [103] ("SMF"), with its Motion for Summary Judgment. Defendants filed a Statement of Material Facts in Opposition to Plaintiffs Motion for Summary Judgment and a Statement of Additional Material Facts ("SAMF"), ECF No. [114], with its Response to Defendant's Motion. Plaintiffs also filed a Reply Statement of Additional Materials Facts to Defendants SAMF ("RSAMF"), ECF No. [127].

Court of the Eleventh Judicial Circuit for Miami-Dade County, Florida, Case No.: 2022-010734-CA-01. ECF No. [1]. Defendants thereafter removed this action to federal court and on September 9, 2022, Plaintiffs filed their Amended Complaint. ECF No. [12].

Plaintiffs assert six claims against Defendants arising from Defendants alleged breach of the Parties contract: Damages under an Account Stated (Count I); Damages under an Open Account (Count II); Unjust Enrichment (Count III); Contract Implied in Fact (Count IV); Contract Implied in Law (Count V); and for a Declaratory Judgment (Count VI). *See generally id.* On September 23, 2022, Defendants filed an Answer and Counterclaim, ECF No. [14]. Defendants assert five claims based on the breach of the same contract: Breach of Oral Contract (Count I); Unjust Enrichment in the Alternative (Count II); Breach of the Implied Duty of Good Faith and Fair Dealing (Count III); Violation of the Florida Deceptive and Unfair Trade Practices Act (Count IV); and a request for Temporary, Preliminary, and Permanent Injunctive Relief (Count V).

On September 13, 2023, Plaintiffs filed the instant Motion seeking summary judgment on all five of Defendants counterclaims. Plaintiffs assert that the undisputed material facts establish that an oral contract exists between the parties obligating Plaintiffs to design and manufacture a "modular Roman-Corinthian 'Coliseum'" in exchange for a total sum of $1,252,968.00. Motion at 2. Plaintiffs contend that Defendants assert an invalid breach of contract counterclaim, and that their remaining claims are either implausible or foreclosed by the existence of the oral contract. Defendants respond that genuine disputes of material fact preclude summary judgment on its breach of oral contract claim, and that they assert viable claims for unjust enrichment and injunctive relief.[2] Plaintiffs reply that the undisputed material facts establish that they are entitled to summary judgment on each of the pending counterclaims.

---

[2] Defendants do not respond to Plaintiffs argument that they are entitled to summary judgment on Counts III and IV of Defendants Counterclaim. The Court previously denied Defendants motion to

## A.  MATERIAL FACTS

Based on the Parties' briefings and the evidence in the record, the following facts are not genuinely in dispute unless otherwise noted.

Beginning in early 2020, Defendants engaged Plaintiffs to design and manufacture a specialized modular Roman-Corinthian "Coliseum" stage prop ("Stage Prop") for use at an event organized by Defendants at Amway Arena in Orlando, Florida ("Amway Arena Event"). SMF ¶ 3; SAMF ¶ 3. The event was originally scheduled to take place in July 2020. SMF ¶ 3; SAMF ¶ 3. The Parties initially entered an agreement for Plaintiffs to fabricate the Stage Prop in exchange for Defendants paying a total sum of approximately $679,000.00. ECF No. [97-1] at 49; ECF No. [98-1] at 2.[3] On or about March 2020, the Parties executed an oral contract ("Oral Contract") modifying their original agreement. SMF ¶ 4; SAMF ¶ 4. The Oral Contract obligated Plaintiffs to fabricate a larger version of the Stage Prop within approximately three and a half months and to assist with installing and disassembling the Stage Prop at the Amway Arena Event. SMF ¶ 4; SAMF ¶ 4. The Parties dispute the modified total price Defendants agreed to pay for the Stage Prop fabrication and related services.[4] SMF ¶ 5; SAMF ¶ 5. The total price of the Oral Contract was to be paid in installments intended to finance Plaintiffs fabrication of the Stage Prop. SMF ¶ 5; SAMF ¶ 5. The terms governing the installation payments are disputed. SMF ¶¶ 5, 7; SAMF ¶¶ 5, 7.

On March 25, 2020, Plaintiffs sent Defendants the first of several invoices. The invoice

---

voluntarily dismiss those claims. *See* ECF No. [95].

[3] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

[4] Plaintiffs move to strike Defendants' SAMF under Local Rule 56.1(b)(2) due to Defendants' failure to comply with Local Rule 56.1(b)(2)'s formatting conventions, and because Defendants fail to limit their evidentiary citations to evidence specific to the disputes implicated by Plaintiffs' SMF. *See* RSAMF at 1-2. The Court declines to strike Defendants' SAMF due to those deficiencies. The Court shall limit its discussion of the material facts to those raised by Plaintiffs' Motion and the supporting and opposing submissions, however.

listed a total cost of $1,252,968.00 for the Stage Prop as well as a $250,000.00 down payment. ECF No. [98-4] at 1. The invoice notes that the initial deposit came "directly from the client" and "will be refunded once the full deposit (for the start of the job) has been received by [Plaintiffs] funded by the 'Bank.'" *Id.* The invoice also provides that $125,890.80 is "due by the end of April[,]" and that additional payments of $375,890.80 were due in the beginning of May and June 2020, respectively. *Id.* The invoice also includes a "remaining 10%" of the Oral Contract, or $125,296.80, as due upon installation. *Id.* Plaintiffs subsequently prepared a second invoice featuring the same total cost of $1,252,968.00, but with a slightly adjusted payment schedule. ECF No. [98-5] at 1. The invoice provided for a $150,000.00 down payment, a $100,000.00 "additional down[] payment[,]" and the same additional payments of $375,890.80 due in the beginning of May and June 2020. *Id.* The invoice also included a payment of $125,296.80 due upon installation. *Id.*

Defendants made two initial payments: an initial down payment of $150,000.00 on March 31, 2020, and a $100,000.00 payment on April 22, 2020. ECF No. [98-1] ¶¶ 8, 11 ("Blohm Declaration"). On April 23, 2020, Jerry Blohm ("Blohm"), Plaintiffs' owner and principal, sent Michelle Brannon ("Brannon"), a member of Defendants Executive Board, an email titled "New Invoice". ECF No. [98-6] at 1. Blohm noted that Plaintiffs "received the funds yesterday" and attached a third invoice. *Id.* The invoice listed a total cost of $1,252,968.00, and Defendants "non-refundable" down payments of $150,000.00 and $100,000.00.[5] *Id.* at 2; ECF No. [98-1] ¶ 11. The invoice listed an additional $125,890.80 payment as the "remainder due in 5 days to continue" as well as the same $375,890.80 payments due in the beginning of May and June 2020, respectively. *Id.* The invoice also included the same final installation payment of $125,296.80. *Id.*

On April 28, 2020, Blohm sent Brannon another email, titled "Budget". ECF No. [98-7].

---

[5] The latter $100,000.00 payment is labeled as "23-Apr-2020". ECF No. [98-6] at 1.

Blohm noted that he "reviewed my numbers [and] at the moment we are as [of] today at $255k[.]" Blohm also stated that "[o]ur contract with you was $375k per month" and that as of "Friday 1 May 2020 I need the rest of April's payment of $125,890." *Id.* Blohm further noted that "this is a critical time in the fabrication process[]" and that "we will be lucky to make [the Stage Prop] come in at" the total budget of $1,252,968.00. *Id.* Blohm attached a fourth invoice with a total budget of $1,252,968.00 listing deposits of $150,000.00 labeled "3/31/202[0] non-refundable", $100,020.00 labeled "4/22/2020 non-refundable", and $60,000.00 labeled "5/6/2020 non-refundable". *Id.* at 2. The invoice also reflects a sum of $310,020.00 both as "an initial deposit … (coming directly from the client) … [to be] refunded once the deposit (for the start of the job) has been received by [Plaintiffs] funded by the 'Bank[,]'" and as a "non-refundable [payment] 30 April 2020." *Id.* The invoice also provides for three payments of $375,890.80 due April 1st, 2020, and the beginning of May and June 2020, respectively. *Id.* The April 1st payment includes a note explaining that this payment is "to start project[.]" The invoice also includes a $125,296.80 payment "[u]pon final install." *Id.*

Plaintiffs also provided Defendants with two undated invoices titled "ART BUDGET Arena Stage". ECF Nos. [98-3] at 1-2, [98-8] at 4-5. The first of those invoices ("First Art Budget") lists a total budget of $1,252,968.00. ECF No. [98-3] at 1-2. The First Art Budget provides for total labor costs of $404,075.00 and a total materials cost of $848,893.00, with the latter sum itemized as "PRODUCTION EXPENSES TOTAL". *Id.* The second detailed invoice ("Second Art Budget") lists a total budget of $1,262,668.00. ECF No. [98-8] at 4-5. The Second Art Budget provides for total labor costs of $404,075.00 and a total materials cost of $858,593.00, also listed as "PRODUCTION EXPENSES TOTAL". *Id.* In his deposition, Joseph Busch ("Busch"), a volunteer minister and Defendants' designed representative, testified that the Second Art Budget's

total budget of $1,262,668.00 reflects the final agreed-upon price for the Stage Prop. ECF No. [97-1] at 52, 54.

In approximately late May 2020, Defendants advised Plaintiffs that the Amway Arena Event was postponed to a later date. ECF No. [98-1] ¶ 17. Plaintiffs insisted that Defendants continue to make payments to enable Plaintiffs to fabricate the Stage Prop within the agreed-upon timeline of three and a half months. *Id.* ¶ 18. Defendants paid Plaintiffs a total of approximately $788,000.00 between April 2020 and May 2021. ECF No. [97-1] at 99; SAMF ¶ 5. The Parties dispute whether Defendants' payments complied with the installment payment schedule under the Oral Contract. It is also disputed whether Plaintiffs' progress in fabricating the Stage Prop required Defendants to continue making timely payments.[6]

## II. LEGAL STANDARD

### A. Summary Judgment

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citations to materials in the record, including depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). "A factual dispute is 'material' if it would affect the outcome of the suit under the governing law, and 'genuine' if a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

A court views the facts in the light most favorable to the non-moving party, draws "all

---

[6] Busch testified that Plaintiffs failed to provide sufficient documentation of their progress, including receipts accounting for the expenditure of Defendants' funds. ECF No. [97-1] at 120-24, 126, 128. Busch also testified that he was unaware of any deceptive conduct by Plaintiffs. ECF No. [97] at 158-60.

reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations[.]'" *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019); *see also Crocker v. Beatty,* 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-moving party's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant." (citation omitted)). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990) (citation omitted).

## III.  DISCUSSION

### A.  Count I – Breach of Oral Contract

Plaintiffs contend that they are entitled to judgment on Count I because Defendants' breach of oral contract claim is invalid as a matter of law. Alternatively, Plaintiffs argue that, even if Defendants assert a valid breach of contract claim, the undisputed evidence establishes that Defendants breached the oral contract.

The Court must apply Florida law to interpret the Parties' oral contract, as this is a question of contract interpretation under diversity jurisdiction. *Canal Indem. Co. v. Margaretville of NSB, Inc.*, 562 F. App'x 959, 961 (11th Cir. 2014); *Mid-Continent Cas. Co. v. Am. Pride Bldg. Co., LLC*, 601 F.3d 1143 (11th Cir. 2010). "For there to be an enforceable oral contract, there must be an offer, an acceptance, consideration, and sufficient specification of essential terms so that the obligations involved can be ascertained." *New Dirt, Inc. v. Harrison*, 182 So. 3d 773, 774-75 (Fla. Dist. Ct. App. 2015) (citing *St. Joe Corp. v. McIver*, 875 So.2d 375, 381 (Fla. 2004)).

Here, Plaintiffs argue that Defendants' breach of contract claim is based on an unenforceable contract because essential terms are indefinite, and it is subject to the statute of frauds. Defendants respond that the Oral Contract between the Parties includes all essential terms, and those terms demonstrate that it is not subject to the statute of frauds. It is undisputed that the Oral Contract exists between the Parties, and that this contract features consideration, namely, money, in exchange for fabricating the Stage Prop.

### a. The Oral Contract's price term

As a threshold matter, the Court finds that the agreed-upon price for Plaintiffs' fabrication of the Stage Prop constitutes a genuine dispute of material fact. Plaintiffs contend that Defendants accepted their modified offer to fabricate the Stage Prop in exchange for a total payment of $1,252,968.00. In support, Plaintiffs point to the First Art Budget and five invoices providing a total budget of $1,252,968.00 for the Stage Prop, emails referencing the same, and Blohm's Declaration attesting that the Parties understood the Oral Contract as providing a total price of $1,252,968.00. *See* ECF Nos. [98-1] ¶ 10, [98-3] at 1-2, [98-4] at 1, [98-5] at 1, [98-6] at 1-2, [98-7] at 1-2. Defendants argue that the agreed-upon price was $1,262,668.00 and provide the undated Second Art Budget listing that price as the total for the Stage Prop. ECF No. [98-8] at 4-5. Defendants also rely on Joseph Busch's deposition testimony wherein he explains that Defendants' understanding was that $1,262,668.00 represents the final agreed-upon price under the Oral Contract. ECF No. [97-1] at 52, 54. Plaintiffs concede that the undated $1,262,668.00 Second Art Budget was "publish[ed] at one point" by Plaintiffs but assert that this budget "is not the final budget agreed to." SMF ¶¶ 30-31. Other than relying on the Blohm Declaration, however, Plaintiffs provide no evidence that the Second Art Budget was not intended to constitute the agreed-upon price for the Stage Prop, or that it was superseded by the First Art Budget or invoices

providing a budget of $1,252,968.00.

The Parties thus each point to documentation, including the total budget, that they argue was the agreed-upon price under the Oral Contract, as well as record testimony providing that each total was the final budget agreed to by the Parties. As noted, both the First and Second Art Budgets are undated, and Plaintiffs do not account for the Second Art Budget's higher total price beyond pointing to the $1,252,968.00 budget provided in the First Art Budget, related invoices, and supporting testimony. On this record, the Court is unable to determine which budget reflects the final agreed-upon price under the Oral Contract. The fact that Plaintiffs provide more documentation in support of the $1,252,968.00 sum as the final contract price and argue that the $1,262,668.00 was never an agreed-upon price fails to show that this is conclusive, considering the contrary record evidence. The Oral Contract's final price thus constitutes a genuine dispute of material fact. The Court proceeds to consider whether Plaintiffs have established that Defendants' breach of oral contract claim nonetheless fails as a matter of law.

### b.  Whether Defendants breach of contract claim fails as a matter of law

As discussed, Defendants contend that the Oral Contract provides that Defendants would pay Plaintiffs a total of $1,262,668.00 in monthly installments based on Plaintiffs "periodic status updates on construction"—complete with proof of the costs expended on the Stage Prop—in exchange for Plaintiffs' fabrication of the Stage Prop and assisting with installation and disassembly at the Amway Arena Event. Response at 9. Plaintiffs argue that this Oral Contract, even if established, is invalid due to the absence of specific terms as to "how payments were to be made, and [the] duration of the construction project[.]" Motion at 9. As Defendants accurately observe, however, it is undisputed that the Parties intended the duration of this project to be three and a half months. *See* SMF ¶ 4; SAMF ¶ 4. Moreover, Defendants' contention that the Oral

Contract does not provide for fixed installment payments does not invalidate Defendants' breach of contract claim.

Although the Parties dispute the fixed price under the Oral Contract, it is undisputed that the Oral Contract contains a fixed price term. More generally, it is also undisputed that the Parties 1) executed the express Oral Contract, 2) that Oral Contract provides for money in exchange for fabrication of the Stage Prop as consideration, and 3) the Oral Contract was intended to be completed within three and a half months. *See* SMF ¶ 4; SAMF ¶ 4. For the reasons set forth below, the Court finds that whether the Oral Contract provides for fixed installment payments fails to create a genuine dispute of material fact. Plaintiff fails to show that the absence of specific installment payments renders Defendants breach of contract claim invalid as a matter of law. Accordingly, Plaintiff fails to show that it is entitled to judgment on Count I regardless of whether the Oral Contract contains such fixed payments.

Plaintiff's reliance on *Jacksonville Port Authority v. W.R. Johnson Enterprises, Inc.*, 624 So.2d 313 (Fla. 1st DCA 1993) and *W.R. Townsend Contracting, Inc. v. Jensen Civil Const., Inc.*, 728 So.2d 297, 300 (Fla. 1st DCA 1999) to argue that Defendants' claim is fatally indefinite is misplaced. In *Jacksonville Port Authority*, the court concluded that "clearly no enforceable contract existed" after determining that "[t]here was never an agreed-upon price between the parties[]" nor agreement as to the "scope of the work[]" under the construction contract in question. 624 So.2d at 315. The court noted that "negotiations between the parties as to these essential terms" continued without ever fixing those terms, and that the bidding party "was still seeking acceptance of its proposals[]" well after the alleged breach occurred. *Id.* Here, as discussed, Plaintiffs do not argue that an enforceable contract never existed between the Parties, or that it lacks a fixed price. Conversely, Plaintiffs argue that an enforceable oral contract exists between the Parties and was

breached by Defendants. Moreover, it is undisputed that Plaintiffs accepted Defendants' offer to pay them in exchange for fabricating the Stage Prop. The Parties instead dispute which of the two budgets at issue constitutes the final agreed-upon price. None of the missing terms that led to the court's determination that no contract existed in *Jacksonville Port Authority*—the price, scope of work, and lack of acceptance—are present here.

In *W.R. Townsend Contracting, Inc.*, the court concluded that an enforceable oral contract existed between a subcontractor and general contractor after finding that that contract included all essential terms. 728 So.2d at 301-02. The court found that the general contractor accepted the subcontractor's offer to accept the subcontractor's bid price, and to hire that subcontractor if it was awarded the bid in question. *Id.* at 301. The court determined that the oral contract's terms—furnished by the subcontractor bid listing labor and materials based on the construction project's specifications—provided the essential price terms as well as consideration. *Id.* at 301-02. Although the oral contract did not contain specifics as to performance or payment, the court found that "[t]he fact that other, non-essential terms remained open is not fatal to Appellant's claim." *Id.* at 302 (citing *Henry C. Beck Co. v. Arcrete, Inc.*, 515 S.W.2d 712, 716 (Tex. Civ. App. 1974)).

Here, as discussed, Plaintiffs argue that specific installment payments are an essential term of the Parties' Oral Contract, and that Defendants' argument that the Oral Contract features no specific installment payments is fatal to their breach of contract claim. However, *W.R. Townsend Contracting, Inc.*, provides little support for concluding that specific installment payments constitute an essential contractual term where, here, it is undisputed that the Oral Contract contains a specified price, a specific duration, and a defined scope of work to be performed. Plaintiffs, accordingly, fail to show that Defendants' breach of contract claim is invalid as a matter of law for failing to provide for fixed installment payments.

### c.   Whether the Statute of Frauds precludes enforcing the Oral Contract

Plaintiffs next argue that, even if Defendants assert a valid breach of contract claim, the Statute of Frauds precludes enforcement of the contract. This argument fails as a matter of law. The Statute of Frauds provides that "[n]o action shall be brought … upon any agreement that is not to be performed within the space of 1 year from the making thereof … unless the agreement or promise … shall be in writing and signed by the party to be charged therewith[.]" Fla. Stat. § 725.01. As noted, it is undisputed that the Parties executed the Oral Contract with the intention that the Stage Prop be completed within three and a half months' time. SMF ¶ 4; SAMF ¶ 4. The Oral Contract is thus not "an oral contract of indefinite duration." *Browning v. Poirier*, 165 So. 3d 663, 666 (Fla. 2015).

Plaintiffs nonetheless argue that the fact that this project was delayed, and Defendants continued payments to Plaintiffs as late as May 2021 support that the Statute of Frauds precludes Defendants' breach of contract claim. That argument ignores the Supreme Court of Florida's guidance that "oral contracts … [are] not within the statute [of frauds] if at the time the contract is made there is a possibility in law and in fact that full performance … may be completed before the expiration of a year." *Id.* at 665-66 (citing 9 Williston on Contracts § 24:3 (4th ed. 2011)). Here, the Oral Contract was plainly intended to be completed within three and a half months' time. Moreover, the Oral Contract's "full performance [was] possible within one year from the inception of the contract[,]" a finding Plaintiffs do not dispute. *Id.* at 666. Plaintiffs have accordingly failed to show that they are entitled to judgment on Count I based upon the Statute of Frauds.

### d.   Whether Defendants breached the Oral Contract

Finally, Plaintiffs argues that even if Defendants assert a valid breach of contract claim, the undisputed evidence establishes that Defendants breached the Oral Contract. Plaintiffs

specifically contend that Defendants' argument that they paid roughly 87% of the total contract price despite Plaintiffs only completing about 30% of the work is contradicted by the record. Defendants argue that Plaintiffs breached the Oral Contract by failing to timely fabricate the Stage Prop despite receiving funds from Defendants. Defendants contend that they paid approximately $788,000.00 to Plaintiffs—representing approximately 87% of the total construction costs owed under the Oral Contract—yet Plaintiffs only performed about 30% of the work.

Plaintiffs argue that Defendants arrived at this figure by misallocating the construction and labor costs under the Oral Contract. Plaintiffs concede that the Second Art Budget on which Defendants rely provides for $858,593.00 for total production costs and $404,075.00 for total labor costs. ECF No. [98-8] at 4-5. Plaintiffs contend that those figures reference the total costs for building the Stage Prop, however. Plaintiffs explain that Defendants only derived their 87% figure by considering the $404,075.00 total labor cost budget as encompassing only the setup and disassembling at the Amway Arena Event itself, not the total labor costs involved in fabricating the Stage Prop. Plaintiffs conclude that the premise of Defendants' breach of contract claim is thus false and establishes that Defendants, not Plaintiffs, breached the Oral Contract.

Plaintiffs' argument that Defendants misallocate the costs included in the Second Art Budget fails to establish that they are entitled to judgment as a matter of law. The Second Art Budget's cost allocation is ambiguous as to the distinction between overall labor costs and labor costs associated with the Amway Arena Event. The itemized positions contained therein include positions that would be necessary to both fabricate the Stage Prop in the first place and to assemble and disassemble it for the Amway Arena Event. For example, the budget provides for welders, carpenters, foam painters, and foam carvers. *Id.* Those positions would presumably be necessary to fabricate the Stage Prop. The budget also includes numerous positions that appear intertwined

with the Amway Event, however, such as "matching riggers", "stage builders", "[r]igger high points", and a production designer. It is accordingly unclear whether the total labor costs concern the fabrication of the Stage Prop or its assembly and disassembly at the Amway Arena Event.

Moreover, even if Plaintiffs establish that Defendants misallocated the cost breakdown in the $1,262,668 budget, this fails to establish that Plaintiffs are entitled to judgment as a matter of law on Defendants' breach of contract claim. As noted, Defendants rely on this budget to argue that they paid Plaintiffs approximately 87% of the total contract price despite Plaintiffs only completing about 30% of the work on the Stage Prop. Plaintiffs dispute that this figure is correct, but not that Defendants paid Plaintiffs more than $780,000.00. Accordingly, even if Plaintiffs are correct that Defendants misallocated the costs reflected in the Second Art Budget, that merely establishes that they paid approximately 60% of that total price rather than 87%. That fails to show that Defendants breached the Oral Contract first, as Plaintiffs contend, considering Defendants' argument that they stopped making payments due to Plaintiffs' failure to perform under the Oral Contract. Plaintiffs have not shown that the undisputed material facts establish that Plaintiffs sufficiently performed under the Oral Contract, or that Defendants failure to continue payment was unjustified. Plaintiffs have accordingly failed to show that they are entitled to summary judgment on Count I of Defendants' Counterclaim.

### B.  Count II – Unjust Enrichment

Plaintiffs next argue that Defendants' unjust enrichment claim fails, as it is undisputed that an express contract exists between the Parties. Defendants respond that Plaintiffs' argument fails because a reasonable juror could conclude that Plaintiffs were unjustly enriched by Defendants payments under the Oral Contract.

"A claim for unjust enrichment must satisfy four essential elements: (1) the plaintiff must confer a benefit upon the defendant; (2) the defendant must have knowledge of the benefit; (3) the

defendant accepts and retains the benefit; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof." *Jackson–Jester v. Aziz,* 48 So.3d 88, 90 (Fla. 2d DCA 2010). Defendants argue that Plaintiffs performed between 30-40% of the total work on the Stage Prop, and that their payment of approximately 87% of the total owed under Oral Contract thus establishes that about half of those payments have been improperly retained by Plaintiff. As Plaintiffs accurately observe, however, it is undisputed that an express agreement—the Oral Contract—exists between the Parties.

Under Florida law, a party "cannot pursue an equitable theory, such as unjust enrichment or quantum meruit, to prove entitlement to relief if an express contract exists." *Ocean Commc'ns, Inc. v. Bubeck*, 956 So. 2d 1222, 1225 (Fla. 4th DCA 2007); *see also Kovtan v. Frederiksen*, 449 So.2d 1, 1 (Fla. 2d DCA 1984) ("It is well settled that the law will not imply a contract where an express contract exists concerning the same subject matter[.]"). As noted, Defendants rely on their payments under the Oral Contract to support their unjust enrichment claim. That fact is fatal to their unjust enrichment claim, as "[a]ny proof of an express agreement between the parties as to the compensation to be paid for the services rendered … defeat[s] rather than sustain[s] an action based upon quantum meruit." *In re Estate of Lonstein*, 433 So.2d 672, at 674 (Fla. 4th DCA 1983). Defendants' argument in support of Count II is accordingly foreclosed by the existence of the Oral Contact. Plaintiffs have therefore demonstrated their entitlement to summary judgment on Count II of Defendants' Counterclaim.

### C.  Count III – Implied Duty of Good Faith and Fair Dealing

As with Count II, Plaintiffs contend that the existence of the Oral Contract forecloses Defendants' claim that Plaintiff's deficient performance breached an implied duty of good faith and fair dealing. Defendants do not offer a response. "Where a party to a contract has in good faith performed the express terms of the contract, an action for breach of the implied covenant of good

faith will not lie*." Burger King Corp. v. Weaver*, 169 F.3d 1310, 1317-18 (11th Cir. 1999). Accordingly, "a cause of action for breach of the implied covenant cannot be maintained (a) in derogation of the express terms of the underlying contract or (b) in the absence of breach of an express term of the underlying contract." *Id.* (citing *City of Riviera Beach v. John's Towing*, 691 So.2d 519, 521 (Fla. Dist. Ct. App. 1997); *Hospital Corp. of America v. Florida Med. Ctr., Inc.*, 710 So.2d 573, 575 (Fla. Dist. Ct. App. 1998)).

Here, as discussed, Defendants contend that the Oral Contract obligated Plaintiffs to fabricate the Stage Prop in exchange for Defendants' installment payments, contingent on Plaintiffs' status updates. Defendants' breach of the Oral Contract claim is based on Plaintiffs breach of this express term rather than on an implied duty to perform in good faith. In other words, Plaintiffs failure to fully perform either constitutes a breach of this express term, or, should Plaintiff prevail on their breach of contract claim, Plaintiffs' partial performance does not constitute a breach in light of Defendants' failure to continue making payments.

Count III accordingly fails as a matter of law, as any breach of an implied duty of good faith and fair dealing would be in derogation of the undisputed terms of the Oral Contract, namely, performance in exchange for installment payments based on Plaintiffs construction progress. *See Flagship Nat. Bank v. Gray Distribution Sys., Inc.*, 485 So. 2d 1336, 1340 (Fla. Dist. Ct. App. 1986) ("The good faith obligation found … may not be imposed to override express terms in the contract.") (citations omitted). Plaintiffs are therefore entitled to judgment on Count III of Defendants' Counterclaim.

### D. Count IV – Florida Deceptive and Unfair Trade Practices Act

Plaintiffs argue that they are entitled to summary judgment on Count IV because Defendants fail to state a plausible claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), and the undisputed evidence fails to support any such claim. As with Count III,

16

Defendants do not offer a response. To prevail on their FDUTPA claim, Defendants must prove three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Am. Mariculture, Inc. v. Syaqua Americas, Inc.*, 2021 WL 2315003, *4 (M.D. Fla. June 7, 2021) (quoting *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006)). An act is deceptive within the meaning of the FDUTPA where a party makes a "representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Peterbrooke Franchising of Am., LLC v. Miami Chocolates, LLC*, 312 F. Supp. 3d 1325, 1343 (S.D. Fla. 2018)). Furthermore, "[p]roof of actual damages is necessary to sustain a FDUTPA claim." *Nazario v. Pro. Acct. Servs., Inc.*, 2017 WL 1179917, *5 (M.D. Fla. Mar. 30, 2017).

Defendants' deceptive and unfair trade practice claim alleges that Plaintiffs violated the FDUTPA by "improperly using the funds paid by [Defendants] for construction of the stage prop for other purposes, misrepresenting to [Defendants] the timeliness of constructing the prop set, [and by] failing and/or refusing to account for over $300,000 in contract funds despite demand from [Defendants]." ECF No. [14] ¶ 55. Defendants do not point to any record evidence supporting those allegations, however. The Court's independent review of the record evidence fails to reveal evidence to support Defendants' allegations that Plaintiffs' improperly used Defendants' funds and related misrepresentations in violation of the FDUTPA.[7] Moreover, the undisputed evidence is devoid of any indication that Defendants detrimentally relied on any misrepresentations made by Plaintiffs.

Conversely, Plaintiffs point to Busch's deposition testimony and Defendants' interrogatory

---

[7] When asked to identify specific evidence supporting the allegation that Plaintiffs misappropriated Defendants' funds, for example, Busch testified "[i]t was not about accusing them, it was about investigating to inspect to make sure that things were on course, which we did not receive." ECF No. [97-1] at 129.

responses to demonstrate their entitlement to judgment as a matter of law on Count IV. When asked to describe facts supporting Defendants' FDUTPA claim, Busch testified that Defendants "are simply seeking a breach of contract[.]" ECF No. [97] at 158-60. Busch also testified that he was "not aware[]" of any facts supporting a finding that Plaintiffs acted deceptively during the Parties' course of dealing. *Id.* at 160. Defendants' interrogatory responses similarly fail to support Defendants' FDUTPA claim. When asked to describe the events or facts supporting their FDUTPA claim, Defendants responded that they "do not intend on pursuing any claims or damage associated with reputation or non-economic damages and do not intend on asserting any facts or other evidence in support of these claims." ECF No. [99-2] at 3-4. Defendants cannot prevail on their FDUTPA claim without any such evidence. Plaintiffs have accordingly met their burden to show that the undisputed evidence entitles them to judgment on Defendants' FDUTPA claim.

### E.  Count V – Injunctive Relief

Plaintiffs argue that they are entitled to judgment on Count V because the undisputed evidence fails to show that injunctive relief is an appropriate remedy. Plaintiffs contend that monetary damages are an adequate remedy for Defendants' breach of contract claim, and injunctive relief is accordingly improper. Defendants respond that injunctive relief is appropriate because they will suffer irreparable injury if Plaintiffs sell or dispose of the Stage Prop materials.

Granting a request for preliminary injunction is "appropriate if—but only if—the movant shows '(1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.'" *Callahan v. United States Dep't of Health & Hum. Servs. through Alex Azar II*, 939 F.3d 1251, 1257 (11th Cir. 2019) (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)).

Relevant here, the Eleventh Circuit has explained that a party suffers an irreparable injury only if monetary damages cannot remedy that injury:

> "An injury is 'irreparable' only if it cannot be undone through monetary remedies. 'The key word in this consideration is *irreparable.* Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.'"

*Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville,* 896 F.2d 1283, 1285 (11th Cir.1990) (quoting *Sampson v. Murray,* 415 U.S. 61, 88, 94 S.Ct. 937, 952, 39 L.Ed.2d 166 (1974)).

Here, Defendants argue that they will suffer substantial injuries if Plaintiffs are not enjoined from liquidating or selling the Stage Prop materials. Defendants contend that the unique nature of the Stage Prop materials, money invested in the Stage Prop materials to date, risk of loss of reputation and future donors, and inability to host similar outreach events in the future shows that they will suffer irreparable injury without injunctive relief.

Despite the risk of those potential injuries, the undisputed evidence establishes that "even if [Defendants] establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (collecting cases). Moreover, as "emphasized on many occasions" by the Eleventh Circuit, "the asserted irreparable injury 'must be neither remote nor speculative, but actual and imminent.'" *Id.* (quoting *Northeastern Fla. Chapter of the Ass'n of Gen. Contractors,* 896 F.2d at, 1285); *see also Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir.1975) ("An injunction is appropriate only if the anticipated injury is imminent and irreparable.").

19

The overwhelming majority of Defendants' injuries are plainly amendable to monetary remedies. The money invested in the Stage Prop to date, as well as the need to expend additional resource should Defendants re-create this Stage Prop through another vendor, are compensable as part of Defendants' expectation damages. The same is true of Defendants' potential loss of reputation or future donors. If Defendants can prove those injuries are non-speculative, they are also properly included in Defendants' expectation damages. This determination is supported by the fact that Defendants seek monetary damages for Plaintiffs' alleged breach of the Oral Contract.

Defendants also emphasize the unique nature of the Stage Prop design, yet no record evidence suggests that another vendor would be unable to recreate Plaintiffs' progress to date. Moreover, the unique nature of the Stage Prop design alone fails to establish irreparable injury, particularly in light of Defendants' contention that Plaintiffs rendered deficient performance in constructing the Stage Prop. Finally, Defendants' observation that failing to afford injunctive relief will preclude them from hosting future outreach events is without merit. As noted, Defendants must show their asserted irreparable injury is "actual and imminent." *Siegel*, 234 F.3d at 1176-77. Here, there is no evidence that Defendants have immediate plans to host similar outreach events featuring the Stage Prop, or that they will be unable to host such events without first obtaining the Stage Prop materials in Plaintiffs' possession. The Court concludes that the monetary remedies available to Defendants are sufficient to remedy their injuries.

The Court thus determines that the undisputed evidence shows that Defendants are not entitled to injunctive relief. The Court accordingly need not consider whether Defendants satisfy the remaining three factors. *See Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am*, 896 F.2d 1283, 1285 (11th Cir. 1990) ("We need not address each element because we conclude that no

showing of irreparable injury was made."); *see also Snook v. Tr. Co. of Georgia Bank of Savannah*, 909 F.2d 480, 487 (11th Cir. 1990) (same).

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Plaintiffs' Motion for Summary Judgment, **ECF No. [102]**, is **GRANTED in part and DENIED in part** consistent with this Order.

2.  Defendants' claim under Count I shall proceed against Plaintiffs.

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 30, 2023.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record