## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-22594-Civ-BLOOM/TORRES

MOVIE PROP RENTALS LLC, a Florida
limited liability company; and MIAMI
PROP RENTALS LLC, a Florida limited
liability company;

        *Plaintiffs*,

v.

THE KINGDOM OF GOD GLOBAL
CHURCH a foreign Missouri not for
profit corporation and JOSHUA MEDIA
MINISTRIES INTERNATIONAL a foreign
Missouri not for profit corporation;

        *Defendants.*
_____/

## REPORT AND RECOMMENDATION ON PLAINTIFFS'/COUNTER-DEFENDANTS' MOTION FOR ATTORNEYS' FEES

This matter is before the Court on Plaintiffs/Counter-Defendants Movie Prop Rentals LLC's and Miami Prop Rentals LLC's ("Plaintiffs" for short) Motion for Attorneys' Fees against Defendants/Counter-Plaintiffs, The Kingdom of God Global Church and Joshua Media Ministries International ("Defendants" for short). [D.E. 189]. Defendants filed their respective response on February 21, 2024 [D.E. 194], to which Plaintiffs timely replied. [D.E. 206]. Plaintiffs' Motion therefore, is ripe for

1

disposition.[1] After a careful review of the motion, response, reply, and relevant authority, and for the reasons discussed below, Plaintiffs' Motion for Attorneys' Fees Against Defendants should be **GRANTED**, but Plaintiffs' request for fee expert costs should be **DENIED**.

## I.   BACKGROUND

The lawsuit arises out of a dispute between Plaintiffs and Defendants, where in early 2020, Defendants engaged Plaintiffs to design and manufacture a highly specialized Roman-Corinthian modular stage prop costing approximately $1.25 million. [D.E. 189 at 2]. When Defendants failed to make agreed installment payments meant to finance the project, construction ceased, and Plaintiffs initiated this lawsuit under various theories of liability. [*Id.*]. Subsequently, Defendants filed a Five-Count Counterclaim against Plaintiffs, seeking damages and equitable relief, with Count IV alleging Plaintiffs' violation of FDUPTA. [*Id.*].

On September 13, 2023, Plaintiffs moved for summary judgment as to all five counts of Defendants' Counterclaim. [D.E. 189 at 3]. The Court then granted in part Plaintiffs' Motion for Summary Judgment on November 30, 2023, to which there has been no rehearing or appeal by Defendants, making Plaintiffs the prevailing party on the adjudicated counts. [D.E. 189 at 2]. Accordingly, Plaintiffs, on January 29, 2024, filed their Motion for Attorneys' Fees and Costs against Defendants seeking

---

[1] On June 13, 2024, the Honorable Judge Beth Bloom referred this matter to the Undersigned Magistrate Judge for disposition. [D.E. 220].

attorneys' fees for prevailing on the counterclaim asserted under FDUPTA (Fla. Stat. §501.2105(1)). [D.E. 189].

In their motion, Plaintiffs seek reimbursement for 249.00 hours at a rate of $425.00 per hour, and 4 hours at an agreed reduced rate of $270.00 per hour, plus an additional 7.4 hours at an hourly rate of $425.00, for a grand total of $108,477.50 in attorneys' fees. [D.E. 189 at 8]. In support, Plaintiffs attached two affidavits to their motion: (1) the Affidavit as to Attorneys' Fees Incurred prepared by counsel, William M. Tuttle, II, as required by F.S. 501.2105 [D.E. 189-1]; and (2) the Affidavit as to Reasonable Attorneys' Fees prepared by Thomas Lehman Esq., explaining his qualifications and expert opinion as to the reasonableness of hours expended, hourly rate, and total attorneys' fees incurred by Plaintiffs. [D.E. 189-2].

Although Plaintiffs argue that their hourly rate and hours expended are reasonable, Defendants disagree, arguing that Plaintiffs are requesting an amount unproportional to the actual time spent defending the singular FDUPTA claim. Defendants further claim that Plaintiffs should have been more diligent in separating the time spent towards the count that invoked FDUPTA from time spent handling the other counts of the counterclaim—a failure that should result in a material reduction of the fee award. Plaintiffs, on the other hand, insist that the intertwined factual nature of the counterclaims preclude dissection, given the near impossibility of such a task and the relevant case law. Plaintiffs argue that the defense of each Count of the Counterclaim was essentially the same, thus, requiring the same necessary preparation.

Lastly, in their reply, Plaintiffs contested Defendants' arguments and requested costs for the retention and involvement of Plaintiffs' expert as part of their reasonable attorneys' fees, tacking on an additional $2,480.00—a cost which Plaintiffs explain was not known at the time of filing their Motion for Fees. [D.E. 206 at 7].

## II.    ANALYSIS

We will first assess whether Plaintiffs are entitled to attorneys' fees under FDUPTA, and then determine the amount in attorney's fees to which Plaintiffs are entitled before analyzing costs.

### A.  _Entitlement_

Defendants invoked FDUPTA in Counterclaim IV, which triggers the Florida rule that a "prevailing party is entitled to reasonable attorney's fees and costs in civil litigation arising from a violation of that act 'after judgment in the trial court and exhaustion of all appeals.'" _Diamond Aircraft Industries Inc. v. Horowitch_, 107 So. 3d 362, 370 (Fla. 2013) (citing § 501.2105(1), Fla. Stat. (2011)).

Although Defendants initially respond that "given [Plaintiffs'] successful substantive dismissal, the accompanying fee provision under the statute would likely no longer come into play…", Defendants later concede that Plaintiffs are entitled to fees under FDUPTA. [D.E. 194 at ¶9]. In fact, Defendants explicitly stipulate that "[P]laintiffs are entitled to recover fees after prevailing on the FDUPTA count…" [D.E .194 at ¶15] and proceed to summarize their arguments by saying that Plaintiffs are

"eligible for fee reimbursement…" [D.E. 194 at ¶20]. Consequently, Defendants do not contest Plaintiffs' entitlement to fees.

Considering the Defendants' Counterclaim Count IV invoking FDUPTA, FDUPTA's attorneys' fees provision, Plaintiffs' ultimate success in dismissing the FDUPTA count, and Defendants' concessions about Plaintiffs' entitlement, we find that Plaintiffs are entitled to a reasonable attorneys' fees award for defending against Defendants' FDUPTA counterclaim.

### B. *Attorneys' Fees*

In determining an appropriate fee award, we employ the lodestar method. *See City of Burlington v. Dogue*, 505 U.S. 557, 562 (1992) ("The 'lodestar figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence. We have established a 'strong presumption' that the lodestar represents the 'reasonable' fee"). This method allows for a reasonable estimate of the value of an attorney's service because the movant submits evidence "supporting the hours worked and rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). If the movant's documentation of hours worked is inadequate, "the district court may reduce the award accordingly." *Id.*

The lodestar method requires the Court to first determine an attorney's reasonable hourly rate, and to multiply that rate by the number of hours reasonably expended. *See, e.g., Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994); *Norman v. Housing Auth. Of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988); *see also Harbaugh v. Greslin*, 365 F. Supp. 2d 1274, 1279 (S.D. Fla. 2005). Following the

Court's calculation, "the court must next consider the necessity of an adjustment for results obtained." *Norman*, 836 F.2d at 1302. Accordingly, when awarding fees, the Court must allow meaningful review of its decision and "articulate the decisions it made, give principled reasons for those decisions, and show its calculation." *Id.* at 1304 (citation omitted).

In awarding attorneys' fees, "courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *ACLU of Georgia v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999). Courts, however, have considerable discretion when determining whether a party to a case should receive a fee award. *See Cullens v. Georgia Dept. of Transp.*, 29 F.3d 1489, 1492-1493 (11th Cir. 1994) (emphasizing that the district court is "empowered to exercise discretion in determining whether an award is to be made and if so its reasonableness").

An award must be reasonable and must fall within the guidelines for fee awards promulgated by the Eleventh Circuit. *See Norman*, 836 F.2d at 1299-1302. It is consequently within a court's ultimate discretion to adjust the fees to an amount it deems proper according to the Eleventh Circuit's parameters. *See, e.g., Columbus Mills, Inc. v. Freeland*, 918 F.2d 1575, 1580 (11th Cir. 1990) ("[T]he *Norman* Court left to the discretion of the district court the decision of whether to prune excessive hours"); *Cullens*, 29 F.3d at 1492 ("[W]e reemphasize that the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of

avoiding frequent appellate review of what essentially are factual matters.") (quotation omitted).

### 1. *The Reasonable Hourly Rate*

The first step is to consider the reasonable hourly rate. This rate is defined as the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation." *Laranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (quoting *Norman*, 836 F.2d at 1299). The relevant market is "the place where the case is filed." *ACLU of Georgia*, 168 F.3d at 427 (internal quotation marks and citations omitted). The relevant legal community here is South Florida.

Several factors may be considered in arriving at that prevailing market rate, as set forth in *Johnson v. Georgia Highway Express, Inc.* 488 F.2d 714, 717-719 (5th Cir. 1974). The movant is required to submit to the Court satisfactory evidence to establish that the requested rate accurately reflects the prevailing market rate. *See Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996); *Norman*, 836 F.2d at 1299 (finding that the burden lies with fee applicant "of producing satisfactory evidence that the requested rate is in line with prevailing market rates" and "satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits."). Ultimately, the Court remains an expert on the issue of hourly rates in its community and may properly consider "its own knowledge and experience concerning reasonable and proper fees and may form an independent judgement

either with or without the aid of witnesses as to value." *Loranger*, 10 F.3d at 781 (quoting *Norman*, 836 F.2d at 1303).

Here, Defendants have raised no objection to Plaintiffs' requested hourly rates. Those rates are as follows:

- **William M. Tuttle, II, Esq.:** $425.00

- **William M. Tuttle, II, Esq.:** $270.00 for the 4-hour time entry "11/8/22"

The Court finds each of these rates to be reasonable. Considering the Affidavit as to Reasonable Attorneys' Fees prepared by Thomas Lehman Esq., the Affidavit as to Attorneys' Fees Incurred prepared by William M. Tuttle, II, and the rates charged by other attorneys with similar experience in South Florida, the $270.00-$425.00 hourly rate is a reasonable rate for FDUPTA related contract cases in the South Florida community. William M. Tuttle, II, has an adequate level of experience and skill to justify such an hourly rate. He is a partner/shareholder, employee, and custodian of the records at the law firm of William M. Tuttle, II, P.A., his private practice. In addition to his position at his practice, he has about forty years of experience, having represented hundreds of clients, and litigated lawsuits in numerous trial and appellate courts in Florida.

Rates such as those Plaintiffs request are not foreign to the South Florida legal community. In *Wahl Hungaria KFT*, for example, the Southern District Court handled a dispute where the plaintiff asserted four counts against defendant: "(1) breach of contract, (2) violation of Florida's Deceptive and Unfair Trade Practices Act

("FDUTPA"), (3) negligent misrepresentation; and (4) unjust enrichment." *See Wahl Hungaria KFT v. 4G Elecs. Grp. Inc.*, No. 0:22-cv-61334-RS, 2024 LEXIS 36103, at *2 (S.D. Fla. March 1, 2024). The court in that case, involving claims extremely similar to Defendants' counterclaims, found that an hourly rate of $540.00 and $594.00 for a partner with 19 years of experience was appropriate. *Id.* at *4-5 (finding hourly rates of $540.00, $594.00, $418.50, $418.50, and $441.00 to be reasonable). In fact, the Southern District has approved and granted even higher rates, which we point out to illustrate the reasonableness of the rates sought here but not necessarily because we agree with the rates awarded in these examples. *See CITGO Petro. Corp. v. Petro. Logistics Serv. USA, Inc.*, No. 22-MC-20762, 2022 U.S. Dist. LEXIS 226105, at *17 (S.D. Fla. Dec. 15, 2022) (highlighting the increase in hourly rates in South Florida and holding that fees of $850.00 for a partner and $700.00 for an associate are reasonable); *Domond v. PeopleNetwork APS*, 750 F. App'x 844, 848 (11th Cir. 2018) ("Those partner rates are reasonable in light of the evidence about Miami rates (which included an average partner rate of $655) and in light of counsel's skills, experience, and reputation."); *Caracol TV, S.A. v. Telemundo TV Studios, LLC*, No. 18-23443-CIV, 2022 U.S. Dist. LEXIS 138908, at *21 (S.D. Fla. Aug. 4, 2022) (recommending rates of $765.00 for work by a partner and $415.00 for an associate).

Thus, because each rate proposed here is reasonable—especially considering the lack of objections from Defendants—the Court should award the rates sought by Plaintiffs for the successful defense of the FDUPTA counterclaim.

## 2. *Hours Reasonably Expended*

Next, the lodestar analysis requires that we determine the reasonable number of hours expended in the litigation. *Norman*, 836 F.2d at 1301. The award must exclude compensation for hours "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." *ACLU of Georgia*, 168 F.3d at 428 (quoting *Norman*, 836 F.2d at 1301) (emphasis in original). The fee applicant bears the burden of establishing that the time for which compensation is sought was reasonably expended on the litigation and must provide the Court with specific and detailed evidence that will allow for an accurate determination of the amount of the fees to award. *Id.* If the fee applicant fails to exercise required "billing judgment," the Court is obligated to "[prune] out those [hours] that are 'excessive, redundant, or otherwise unnecessary." *Id.* The Court is presumed to be an expert in reviewing the number of hours expended on litigation for the purpose of attorney's fees. *Norman*, 836 F.2d at 1303.

The party opposing the fee application must satisfy his obligation to provide specific and reasonably precise objections concerning hours that should be excluded. *ACLU of Georgia*, 168 F.3d at 427. In the final analysis, however, "exclusions for excessive or unnecessary work on given tasks must be left to the discretion of the district court." *Norman*, 836 F.2d at 1301.

Here, Plaintiffs seek 249.00 hours expended by William M. Tuttle, II, at a rate of $425.00 per hour, 4 hours expended by William M. Tuttle, II, at an agreed reduced

rate of $270.00 per hour, and an additional 7.4 hours expended by William M. Tuttle, II, at a rate of $425.00 per hour.

Upon review of Plaintiffs' supporting materials and considering Defendants' general objections, the Court finds that the time spent successfully litigating the FDUTPA counterclaim through summary judgment was reasonable. Defendants continuously argue throughout their response that Plaintiffs' requested fee amount is unreasonable, echoing concerns that the interrelated nature of the counterclaims serves as an unjustifiable basis for Plaintiffs to request fees disproportional to the actual hours expended defending the singular FDUPTA counterclaim. Consequently, Defendants urge that Plaintiffs' fee award be reduced because counsel should have distinguished between time expended on the FDUPTA count and the other counts to avoid seeking recovery for excessive or redundant hours. These arguments prove to be unpersuasive.

First, the record does not fully support Defendants' contention that the interrelated factual nature of the counterclaims should result in a reduction of the fees awarded.  Plaintiffs, in their initial motion, attested that they manually deleted entries that involved services rendered prior to the filing and commencement of Defendants' Counterclaim Count IV or were arguably not related to defense of Defendants claim under FDUPTA, so that only the hours and amounts related to defense of the FDUPTA claim remain. [D.E. 189 at ¶18]. Therefore, the only time entries in which Plaintiffs seek attorneys' fees are those that directly contributed to defending the FDUTPA claim, or those where the preparation went towards each

11

counterclaim inseparably and equally, given the close nexus of interrelated facts behind each count.

Consequently, Plaintiffs cannot, for every time and billing entry, distinguish how much time was spent on each counterclaim. Not only is it unreasonable and not feasible for Plaintiffs to do so, but the relevant case law reveals that it is not a prerequisite to recovery. Florida courts have long held that the "language in section 501.2105 contemplates recovery of attorney's fees for hours devoted to the entire litigation or civil case and does not require allocation of attorney time between the chapter 501 count and other alternative counts based on the same consumer transaction unless the attorney's services *clearly were not related in any way to establishing or defending an alleged violation of chapter 501*." *See Heindel v. Southside Chrysler-Plymouth, Inc.*, 476 So. 2d 266, 271 (Fla. 1st DCA 1985) (citation omitted) (emphasis added). Later district court opinions affirmed this interpretation. *See, e.g., Caplan v. 1616 East Sunrise Motors, Inc.*, 522 So. 2d 920, 921 (Fla. 3rd DCA 1988) ("holding that where, as here, all the claims made against a defendant involve 'a common core of facts and [are] based on related legal theories,' the award of attorney's fees should not be reduced in the absence of a showing that the defendant's attorneys spent a separate and distinct amount of time in defending a count upon which no attorney's fees were awardable.") (citation omitted).

The Florida Supreme Court then expressly approved this interpretation of the statute. *See Diamond Aircraft Industries Inc. v. Horowitch*, 107 So. 3d 362, 370 (Fla. 2013) ("Florida's district courts of appeal have adopted an accurate and reasonable

interpretation of those statutory provisions."). In doing so, the Court's opinion explained that a prevailing party is entitled to fees for the period of litigation until it is determined that a FDUTPA claim is no longer applicable. *Id.* at 371. Furthermore, the court held that "even if a FDUTPA claim is based on the same transaction as an alternative theory of recovery, a court may allocate attorneys' fees under section 501.2105 for only the FDUTPA portion of an action if either (1) counsel admits that the other services provided in that action were unrelated to the FDUTPA claim or (2) a party establishes that the services related to non-FDUTPA claims were clearly beyond the scope of a 501 proceeding." *Id.* at 370. Hence, it is now well established that, in the absence of an admission by the prevailing party that some of the legal services were unrelated to the FDUTPA claim, Florida law authorizes attorneys' fees to a prevailing party for *all* fees incurred in the case *unless* the non-FDUTPA claims were clearly unrelated to or clearly beyond the scope of a FDUTPA proceeding. *Id.* at 370-71 (emphasis added).

Federal Courts applying Florida law have followed suit. The Eleventh Circuit analyzed *Diamond Aircraft* in *Chow v. Chak Yam Chau*, 640 F. App'x 834 (11th Cir. 2015), where the Court found that, under Florida law, the fees recoverable under FDUTPA "are those devoted to the entire action, not merely the FDUTPA claim," unless "the attorneys' services clearly were not related in any way to establishing or defending an alleged violation of Chapter 501." 640 F. App'x at 843. We are obviously bound by the Florida Supreme Court's decisions and our Circuit's interpretation of those decisions. But several other district court cases have also persuasively

13

reemphasized the point.  *See, e.g., Procaps S.A. v. Patheon Inc.*, Case No. 12-24356-CIV-Goodman, 2017 WL 3526917, at *21-29 (S.D. Fla. Aug. 17, 2017) (holding that attorneys' fees are recoverable under FDUTPA under *Diamond Aircraft* and *Chow*.); *Temurian v. Piccolo*, No. 18-62737, 2021 WL 1121003, at *3 (S.D. Fla. Mar. 24, 2021) (reversing Magistrate Judge recommendation that fees be denied as being too intertwined with non-recoverable claims; "fees recoverable under FDUTPA 'are those devoted to the entire action, not merely the FDUTPA claim,' unless 'the attorneys' services clearly were not related in any way to establishing or defending an alleged violation of Chapter 501.'").

So this means that the primary argument in opposition to the amount of fees requested here is flawed under Florida law.  And Defendants have not shown us in any meaningful or persuasive way why the fees incurred here were not related in any way to the successful defense of the FDUTPA counterclaim.

Second, Defendants' arguments serve only as general objections to the time entries at large. Despite their vague objections, Defendants fail to make any specific objections or cite to any particular time entries to support their argument, a fundamental failure on their behalf. *See Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1387, 1389 (11th Cir. 1997) (finding that, in light of appellees' apparently reliable affidavits and detailed time records, appellant's conclusory objections, without more, were insufficient to preclude appellees from recovering the fees requested); *see also Norman*, 836 F.2d at 1301 ("[T]he district court must be reasonably precise in excluding hours thought to be unreasonable or unnecessary,

[and] so should be the objections and proof from fee opponents."); *Am. Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas Cty.*, 278 F. Supp. 2d 1301, 1307, 1314, 1315 (M.D. Fla. 2003) (generalized statements that the "time spent was unreasonable or unnecessary are not particularly helpful and not entitled to much weight. Accordingly, a fee opponent's failure to explain exactly which hours he views as unnecessary or duplicative is generally viewed as fatal… [U]nless clearly non-compensable, all hours as to which the defendants have not made a  sufficient objection should be accepted."). Consequently, Defendants' general objections are insufficient.

Considering Defendants' failure to make specific objections and the relevant case law, and after a diligent review of the extensive—almost fifty page long—time and billing entries provided by Plaintiffs, the attorneys' fees requested by Plaintiffs should be awarded.  Clearly non-recoverable time has already been excised from the request and the Court's review of the billing records for the time that is requested supports the conclusion that such time was necessary for the defense of the FDUPTA claim.

### C.  *Fee Expert Cost*

Lastly we turn to Plaintiffs' request for costs included in the motion for fees. Plaintiffs raise in their reply, for the first time, their request for costs, suggesting that Defendants should pay them an additional $2,480.00 as compensation for the retention and procurement of Plaintiffs' Affidavit of Reasonable Attorney's Fees in this matter. [D.E. 206 at 7].

Although Plaintiffs explain that the cost was not known at the time of filing the Motion for Fees, Plaintiffs fail to even mention a request for affidavit costs in their initial Motion. Their failure in this regard is determinative, given the Court's inability to consider new materials presented for the first time in the reply. *See United States v. Day*, 405 F.3d 1293, 1294 (11th Cir. 2005) (treating issues and contentions raised for the first time in a reply brief as waived or abandoned); *I.T.N. Consolidators, Inc. v. Northern Marine Underwriters, Ltd.*, No. 09-20762, 2016 U.S. Dist. LEXIS 90979, at *4 (S.D. Fla. July 13, 2016) (concluding that the court was precluded from considering plaintiffs' new invoices documenting some costs because they were brought up for the first time in the reply); *Pearson v. Deutsche Bank AG*, No. 21-cv-22437, 2023 U.S. Dist. LEXIS 180760 at *9 (S.D. Fla. Oct. 5, 2023) ("Plaintiffs' request to recover that expense was raised for the first time in reply and the requested cost is not included in the Bill of Costs. Since Defendant has not had an opportunity to respond to that argument, Plaintiffs' request is procedurally improper and the Court declines to consider it. S.D. Fla. L.R. 7.1(c)(1) (requiring that reply memorandum be "strictly limited to rebuttal of matters raised in the memorandum in opposition")).

Apart from that, on the merits, the request for an expert witness cost should be denied because Plaintiffs have not shown that it was essential for the successful presentation of their motion, nor contemplated by the Florida statute itself. Though the Court could in its discretion award such costs if it found the work to be essential,

absent a compelling showing it should not do so.  And no compelling showing has been made here that the expert fee should be awarded as part of the FDUPTA defense.

Consequently, we recommend that the Court deny Plaintiffs' request for expert witness costs associated with Plaintiffs' Motion for Fees as both untimely and unnecessary.

## III.  CONCLUSION

For the reasons set forth above, we recommend that Plaintiffs' Motion for Attorneys' Fees should be **GRANTED**, and Plaintiffs' add-on request for costs should be **DENIED**. Consequently, Plaintiffs should be awarded $108,477.50 in attorneys' fees.

Pursuant to Local Magistrate Rule 4 (b) and Fed. R. Civ. P. 73, the parties have seven (7) days from service of this Report and Recommendation within which to file written objections, if any, to the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see*, *e.g.*, *Patton v. Rowell*, 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security*, 2016 WL 7321208 (11th Cir. Dec 16, 2016).

**DONE and SUBMITTED** in Chambers in Miami, Florida, this 13th day of August, 2024.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge